*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARMERS INSURANCE EXCHANGE,

    Plaintiff-Appellee,

v

HUDSON INSURANCE COMPANY,

    Defendant-Appellant.

UNPUBLISHED
September 22, 2025
9:12 AM

No. 369452
Macomb Circuit Court
LC No. 2023-002394-CZ

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Defendant, Hudson Insurance Company (Hudson), appeals as of right an opinion and order denying its motion for summary disposition under MCR 2.116(C)(7) (claim barred by operation of law), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact, and granting summary disposition to plaintiff, Farmers Insurance Exchange (Farmers), under MCR 2.116(I)(2) (opposing party entitled to summary disposition). We affirm.

## I. FACTUAL BACKGROUND

This case involves a dispute between Farmers and Hudson regarding the assignment of liability for payment of no-fault personal protection insurance (PIP) benefits to an individual named Syrja Lekli,[1] following the assignment of Lekli's claim through the Michigan Automobile Insurance Placement Facility (MAIPF). This case has a long and complicated procedural history, and has been before this Court, in some form, twice before.

### DOCKET NO. 350942

In a prior opinion, this Court set forth the pertinent facts of the case as follows:

---

[1] Lekli is not a party to the current lawsuit and does not participate in this appeal.

In July 2015, B&W and Pergjoni Transport entered into an operating agreement. In that agreement, Pergjoni Transport, owner of a Peterbilt truck, leased the truck to B&W. Pergjoni Transport also agreed to supply transportation services to B&W. The agreement specified that Pergjoni Transport is an independent contractor of B&W. Under the terms of the agreement, Pergjoni Transport was required to maintain insurance on the truck, which it did. Pergjoni Transport had two policies for the truck that were in effect on the date of [Lekli]'s accident, December 11, 2016. One policy was issued by Great American, and the other was issued by nonparty Hudson Insurance Company.

In January 2016, [Lekli] filled out an application to B&W to be a driver for Pergjoni Transport. [Lekli] got the job and signed forms acknowledging that he was an independent contractor with respect to B&W. [Lekli] started working in February 2016. [Lekli]'s routine was to drive his own vehicle to where the Peterbilt truck was parked in Taylor, Michigan, and then drive that truck to Saline, Michigan, where he would generally pick up a trailer full of auto parts. [Lekli] would then drive the fully loaded truck to a plant in Missouri. Afterward, [Lekli] would take an empty trailer back to Saline and then would park the truck in Taylor until the next trip. [Lekli] kept the keys to the truck, even while it remained parked in Taylor. [Lekli] testified that he generally drove this route two times a week and was paid $550 for each trip, or $1,100 for a week. [Lekli] was paid directly by Alfred Pergjoni, and [Lekli] was issued an IRS 1099-MISC form at the end of the year. [Lekli] referred to Mr. Pergjoni as his "boss" or "supervisor" several times during his deposition, and referred to Pergjoni Transport as his "employer."

On December 11, 2016, while driving the truck after picking up a trailer from the Saline plant, [Lekli] was involved in an accident. He suffered injuries as a result of the accident and had three different surgeries. In December 2017, [Lekli] applied for personal protection insurance (PIP) benefits to the MAIPF, alleging that the claim was being made because of a dispute between Farm Bureau, which insured [Lekli]'s personal vehicles, and Great American, which insured the Peterbilt truck. A week later, [Lekli] filed the instant suit.

The Michigan Assigned Claims Plan (MACP), as maintained by MAIPF, denied [Lekli]'s claim. In a denial letter dated January 18, 2018, the MACP stated that "[t]here was higher identifiable coverage at the time of the accident." The MACP issued a second denial letter, dated January 22, 2018, in which the MACP stated that it could not process [Lekli]'s claim without additional information. The letter indicated that because [Lekli] had indicated there was a dispute between two carriers, he needed to send proof of that dispute. Additionally, the letter stated that once the complete information was received, the claim would be reviewed. [Lekli] concedes that the lower court record does not show that he supplied any of the requested information.

Thereafter, many of the defendants filed motions for summary disposition. Great American alleged that its policy specifically excluded coverage when the truck was being used in the business of a lessee or when being used to transport

cargo. In response, without addressing the substance of Great American's argument or the underlying policy and without citing any law, [Lekli] merely asserted that both Farm Bureau and Great American were responsible for PIP benefits.

The MAIPF submitted that, despite [Lekli]'s representations in his complaint of a lack of insurance coverage, the evidence showed that [Lekli] did have personal no-fault coverage through Farm Bureau and that the truck he was driving was insured by both Great American and nonparty Hudson. The MAIPF concluded that because it was the insurer of last resort and applicable identifiable coverage existed, [Lekli] was not eligible to seek benefits through the MAIPF. [Lekli] asserted that because none of the other insurers had acknowledged an obligation to pay PIP benefits, there was a priority dispute, which required the MAIPF to assign the claim. [Lekli] further stated, "[T]he MAIPF is not entitled to summary disposition until such time as there is a higher insurer established either through litigation or acknowledgment of coverage and priority."

Farm Bureau contended that it was entitled to summary disposition because, although an insured generally sought the payment of no-fault benefits from his own insurance policy, MCL 500.3114(3) provides an employment exception. Specifically, an employee injured on the job while an occupant of a vehicle owned by the employer is to receive benefits from the insurer of the furnished vehicle. Farm Bureau maintained that at the time of the accident, [Lekli], under the economic-reality test, was an employee of Pergjoni Transport and B&W, which meant that the no-fault benefits were owed by either Great American or Hudson. [Lekli] submitted, in pertinent part, that MCL 500.3114(3) was inapplicable because under the economic-reality test, he was not an "employee" and instead was an independent contractor.

In an opinion and order, the trial court granted Great American's motion for summary disposition. The trial court noted that the Great American policy had an exclusion for bodily injury arising out of any accident occurring while the vehicle was being used in the business of any lessee or while being used to transport cargo. But the court addressed the significance of the policy's endorsement because, although a general policy may exclude certain coverage, an endorsement can extend coverage. The trial court found no conflict between the endorsement and the general policy and concluded that the exclusion in the policy remained valid. Accordingly, because there was no question of fact that [Lekli] was operating the truck for business and was hauling cargo at the time of the accident, the court granted Great American's motion for summary disposition.

In a second opinion and order, the trial court granted the MAIPF's and Farm Bureau's motions for summary disposition. The trial court ruled that because, under the economic-reality test, [Lekli] was an "employee" of Pergjoni Transport, the insurers of the truck, pursuant to MCL 500.3114(3), were higher priority insurers than Farm Bureau. However, because Great American's policy did not provide coverage in this instance, Hudson was the insurer with the highest priority.

The trial court then granted the MAIPF's motion for summary disposition because once the court determined that Hudson had the highest priority, there was no longer any dispute amongst insurers. After the trial court denied [Lekli]'s motions for reconsideration, this appeal followed. [*Lekli v Farm Bureau Ins Co of Mich (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2022 (Docket No. 350942) (*Lekli III*); unpub op at 2-4, quoting *Lekli v Farm Bureau Mut Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 350942) (*Lekli I*); unpub op at 2-4 (alterations in original).]

This Court affirmed the trial court's ruling. *Lekli I*, unpub op at 10. Lekli appealed to our Supreme Court, which reversed in part and otherwise denied leave to appeal. *Lekli v Farm Bureau Mut Ins Co of Mich*, 509 Mich 983; 973 NW2d 913 (2022). The Court stated, in relevant part:

[I]n lieu of granting leave to appeal, we REVERSE Part III of the Court of Appeals judgment, regarding the Michigan Automobile Insurance Placement Facility's motion for summary disposition, and REMAND this case to that court to address the merits of the plaintiff's claim that the Macomb Circuit Court erred by granting that motion. [*Id*.]

On remand, this Court ruled that the trial court erred by granting the MAIPFs motion for summary disposition. *Lekli II*, unpub op at 4. This Court thus reversed that portion of the trial court's order and remanded for further proceedings. *Id*., unpub op at 7.

DOCKET NO. 352981

In June 2019, while the proceedings in Docket No. 350942 were ongoing, Lekli filed a separate complaint against defendant Hudson. Hudson moved for summary disposition under MCR 2.116(C)(10), which the trial court granted. Lekli appealed to this Court. As relevant to this appeal, this Court described the proceedings arising out of Lekli's complaint against Hudson as follows:

In 2017, Lekli filed a claim against Pergjoni Transport, LLC, B&W Cartage Company, Inc., Great American Assurance Company, Farm Buran [sic] Mutual Insurance Company of Michigan, and the Michigan Automobile Insurance Placement Facility. He did not, however, include Hudson Insurance Company in that lawsuit. Instead, on June 26, 2019, he filed a separate claim against Hudson, seeking payment of personal protection insurance (PIP) benefits under the no-fault policy Hudson had issued for the vehicle.

Relevant to the issues raised on appeal, on August 19, 2019 Lekli sought entry of a default against Hudson Insurance Company based upon its failure to answer the complaint within 28 days after service. See MCR 2.108(A)(2). On August 27, 2019, Hudson Insurance Company filed its answer to the complaint. Lekli objected to the answer, arguing that it was improper because Hudson Insurance Company was in default. Then, after Hudson Insurance Company filed a motion for summary disposition, Lekli argued that the motion was improper

-4-

because of the default. Thereafter, Hudson Insurance Company filed an emergency motion to strike or set aside the default, arguing in part that it had not been entered under MCR 2.603(A) or, alternatively, that the default should be set aside because the requirements for doing so under MCR 2.603(D)(1) had been met. Because of the dispute over whether a default had been entered, the trial court denied the first motion for summary disposition, and it held oral argument on the emergency motion to strike or set aside the default. Thereafter, the court found that the default had not been "entered" by the court clerk under MCR 2.603(A). The court also held that there was good cause to set aside the default because of procedural irregularities. Finally, the court found that Hudson Insurance Company had a meritorious defense to Lekli's claim for PIP benefits. Consequently, the court entered an order striking or setting aside the default. It also denied Lekli's motion for reconsideration.

Thereafter, Hudson Insurance Company filed a new motion for summary disposition under MCR 2.116(C)(10). Following oral argument, the trial court granted that motion. [*Lekli v Hudson Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 19, 2021 (Docket No. 352981) (*Lekli II*); unpub op at 1-2.]

This Court affirmed the trial court's ruling, finding that 1) the trial court did not err by finding that the default was not entered, meaning there was no default to be set aside and no procedural bar to Hudson's motion for summary disposition, and 2) the trial court did not err by granting Hudson's motion for summary disposition, given that Lekli did not comply with MCL 500.3145, which required him to provide notice of his claim to Hudson within one year of date of his injury. *Id*.; unpub op at 4-5.

PROCEDURAL HISTORY

In July 2023, Farmers filed a complaint against Hudson. Farmers explained that Lekli's claim for PIP benefits had been assigned to it through the MACP due to a dispute between insurers regarding priority of coverage. As a result, Farmers paid Lekli $967,521.23 to cover his claim for PIP benefits. Farmers indicated that it was now seeking reimbursement from Hudson, who had been identified as the highest priority insurer. Farmers asked the trial court to enter a judgment against Hudson for $967,521.23, as well as "attorney fees, costs, and interest, along with whatever other relief this Honorable Court finds appropriate and warranted."

In lieu of filing an answer, on August 22, 2023, Hudson filed a motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). In a brief in support of the motion, Hudson first argued that Farmers' claim was barred by the doctrines of collateral estoppel and res judicata. Hudson argued that this was so "because a trial court and an appellate court have both held that Defendant Hudson Insurance Company is not liable for Claimant Syrja Lekli's claim." Hudson reasoned that, because Farmers is a subrogee of Lekli, and the Court of Appeals ruled that Lekli could not obtain PIP benefits from Hudson, Farmers could not pursue reimbursement from Hudson. Hudson additionally argued that Farmers' claim for reimbursement was barred by the law of the case, based on this Court's affirmance of the lower court's ruling that Lekli could not seek PIP benefits from Hudson. According to Hudson, no further discovery would alter the fact

that Farmers was not entitled to reimbursement. Hudson thus asked the trial court to grant its motion for summary disposition and dismiss Farmers' claim for reimbursement.

Farmers responded that its action for reimbursement of PIP benefits was not barred by the doctrines of collateral estoppel, res judicata, or law of the case because no court had issued a determination as to whether Farmers could seek reimbursement from Hudson. Farmers further argued that characterizing its claim as one for "subrogation" was inaccurate, as it was not attempting to stand in Lekli's shoes, but was instead seeking reimbursement in its own right. Additionally, Farmers observed that it had a statutory right to reimbursement under MCL 500.3175. For those reasons, Farmers argued that it was entitled to reimbursement from Hudson for all PIP benefits paid to Lekli. Farmers asked the trial court to deny Hudson's motion for summary disposition and instead enter an order granting summary disposition to Farmers under MCR 2.116(I)(2).

The trial court conducted a hearing in September 2023. At its conclusion, the trial court took the parties' arguments under advisement. In November 2023, the trial court entered an opinion and order denying Hudson's motion for summary disposition and granting summary disposition to Farmers under MCR 2.116(I)(2). The trial court observed that, in *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 561-565; 909 NW2d 495 (2017), this Court reasoned that the statute of limitations generally applicable to claims for PIP benefits under MCL 500.3145 did not apply to the potential damages recoverable by an assigned insurer who seeks reimbursement from the highest priority insurer under MCL 500.3175. Thus, the court reasoned that Lekli's inability to collect PIP benefits directly from Hudson did not have any bearing on Farmers' ability to seek reimbursement from Hudson under MCL 500.3175. The court also found that the matter was not barred by the doctrines of collateral estoppel or res judicata.

The court additionally distinguished this matter from *Griffin v Trumbull Ins Co*, 509 Mich 484, 498, 500-501; 983 NW2d 760 (2022), because there was no evidence that Lekli failed to exercise due diligence in pursuing his PIP claim. The court also noted that a State of Michigan crash report indicated that the Peterbilt truck that Lekli had been driving when the accident occurred was insured by Great American; thus, the court reasoned that Lekli had no reason to look for other potential insurers, including Hudson. The trial court ultimately concluded that Hudson had failed to establish that Farmers could not seek reimbursement of PIP benefits paid to Lekli.

On December 4, 2023, Farmers filed a motion to reinstate the case and for entry of a judgment against Hudson. Farmers explained that it paid $967,521.23 to Lekli in PIP benefits, and additionally incurred $70,396.84 in loss adjustment costs, $32,874.74 in attorney fees, and $15,526.29 in interest. Along with those figures, Farmers submitted an affidavit from Paul Kesteloot, a claims adjuster, averring that Farmers was owed a total of $1,089,319.10. Farmers thus asked the court to reinstate the case solely for entry of a judgment in the amount of 1,089,319.10.

On December 11, 2023, Hudson filed a motion for reconsideration of the trial court's ruling. In a brief in support of the motion, Hudson argued that Farmers failed to follow the statutory procedures outlined in MCL 500.3172, which deprived Hudson of an opportunity to dispute the contention that Hudson was the highest priority insurer. Hudson further argued that the trial court committed palpable error by overlooking Lekli's failure to notify Hudson of his

claim within one year of the injury. Hudson reasoned that, under MCL 500.3145, Farmers was equally foreclosed from seeking reimbursement from Hudson. Hudson thus asked the trial court to grant its motion for reconsideration.

On January 10, 2024, the trial court entered an opinion and order denying Hudson's motion for reconsideration and denying Farmers' motion to reinstate and for entry of a judgment. The court declined to address Hudson's statutory arguments because it had already determined that those arguments lacked merit. The trial court additionally found that Hudson remained the highest priority insurer and that Hudson continued to present the same issues that had previously been ruled on by the court. The court thus concluded that Hudson failed to establish palpable error requiring it to grant the motion for reconsideration.

Regarding Farmers' motion, the trial court observed that the affidavit Farmers submitted in support of its motion was not signed or sworn, meaning that it lacked any evidentiary value. The court therefore concluded that Farmers had not established a proper basis to reinstate the case or amend the judgment to include the requested attorney fees, interest, and costs. The court thus denied both Hudson's motion for reconsideration and Farmers' motion for reinstatement. On January 23, 2024, Hudson filed a claim of appeal in this Court.

POST-APPEAL PROCEDURAL HISTORY

On January 26, 2024, Farmers resubmitted its motion for reinstatement and for entry of judgment. Along with the motion, Farmers submitted a signed and sworn copy of Kesteloot's affidavit.

On February 8, 2024, Hudson filed a response to the motion to reinstate. Hudson argued that the issue of its liability had never been properly litigated and it had never been found to be the insurer of highest priority "because the Michigan Court of Appeals has held that Defendant Hudson Insurance Company may not be held liable for Lekli's claims." Hudson additionally reiterated that Farmers had made no attempt to establish that it was entitled to attorney fees, costs, and interest. Finally, Hudson argued that Farmers had not explained how it calculated the attorney fees owed, in accordance with *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). Hudson contended that, even if Farmers had done so, all of the *Smith* factors "militate[d] against the award of exorbitant attorney fees." Hudson thus asked the trial court to deny the motion to reinstate and for entry of judgment.

On February 12, 2024, the trial court held a hearing on the motion to reinstate and for entry of judgment. Counsel for Farmers explained that the amount of attorney fees requested equated to the "actual costs" to Farmers, which paid an hourly rate of "$165 or $175" to counsel for his services. The trial court found that $165 to $175 per hour was a reasonable rate for the services rendered. Hudson objected, arguing that the court had to address "about seven factors" before determining whether attorney fees were owed. The trial court responded, "Well, you just heard how it was determined, counsel. That is what they charged their client. That is the actual hours expended. That is at a very reasonable rate of $165 or $170." The trial court thereafter granted the motion. On February 13, 2024, the trial court entered an order granting Farmers' motion to reinstate and for entry of a judgment against Hudson in the amount of $1,089,319.10.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

Hudson moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). The trial court granted summary disposition to plaintiffs under MCR 2.116(I)(2). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred because of immunity granted by law." *Mays v Snyder*, 323 Mich App 1, 25; 916 NW2d 227 (2018). "When reviewing a motion under MCR 2.116(C)(7), the trial court must accept as true all of the plaintiff's well-pleaded factual allegations and construe them in favor of the plaintiff unless disputed by documentary evidence submitted by the moving party." *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021). If, after reviewing the evidence, the court finds that "no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law" for the court to decide. *Mays*, 323 Mich App at 25.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim. A trial court reviewing such a motion must accept all factual allegations as true and decide the motion on the pleadings alone. *El-Khalil*, 504 Mich at 160. Summary disposition may be granted only when a claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*. A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). However, "[a] trial court may award summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Hambley v Ottawa Co*, 348 Mich App 585, 591-592; 19 NW3d 411 (2023) (quotation marks and citation omitted).

Questions regarding the application of legal doctrines, including res judicata, collateral estoppel, and the law of the case doctrine, are also subject to de novo review. See *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 202; 12 NW3d 20 (2023); *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021).

Review of a trial court's decision regarding a motion for attorney fees likewise involves questions of fact and law. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013). This Court reviews questions of law de novo, while factual findings are reviewed for clear error. *Id*. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). This court review's a trial court's ultimate decision to award attorney fees for an abuse of discretion, which "occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

B. COLLATERAL ESTOPPEL AND RES JUDICATA

Hudson first argues that Farmers' claim for reimbursement is barred by the doctrines of collateral estoppel and res judicata. We disagree.

1. PRELIMINARY CONSIDERATIONS

As an initial matter, we note that the statement of the issues in Hudson's brief on appeal does not match the substance of its brief. Relevant here, Issue III, regarding whether the doctrines of collateral estoppel and res judicata bar Farmers' claim because Farmers was in privity with Lekli, is not substantively briefed. Generally, if an issue is presented in the statement of issues, but is not substantively addressed in the body of the brief, it is considered abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Hudson's explanation of its privity argument, which is included in its argument regarding collateral estoppel and res judicata, is as follows:

> Plaintiff may attempt to argue that it was not a party to the prior litigation. But as set forth in greater detail *infra*, such an argument would have no merit since Plaintiff is merely a subrogee, and is in direct privity with Lekli. Plaintiff does not have its own claim and is not the aggrieved party; it is merely seeking reimbursement for monies it allegedly paid on behalf of Claimant Lekli.

While we would not deem the issue abandoned based on a lack of "meaningful argument," it is clear that the privity question is merely part of Hudson's larger argument regarding collateral estoppel and res judicata, and should not have been framed as an individual issue. Indeed, it would be nigh impossible to address privity without placing it in the collateral estoppel/res judicata context. We have thus elected to overlook Hudson's noncompliance with the court rules and address the privity issue as part of Hudson's collateral estoppel and res judicata claims. See *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002) ("[A]ddressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle.").

In this case, Farmers sought reimbursement for PIP benefits paid to Lekli after Lekli's claim for PIP benefits was assigned to Farmers by the MAIPF. Hudson suggests that, because this Court previously determined that Lekli could not recover PIP benefits from Hudson, see *Lekli II*, unpub op at 4-5, Farmers is now precluded from seeking reimbursement for servicing Lekli's claim. Hudson contends that Farmers' claim for reimbursement is thus barred by the doctrines of collateral estoppel and res judicata.

2. COLLATERAL ESTOPPEL

Collateral estoppel addresses the preclusion "of specific issues within an action." *Mecosta Co Med Ctr v Metro Group Prop and Cas Ins Co*, 509 Mich 276, 282-283; 983 NW2d 401 (2022). The doctrine of collateral estoppel is "designed to avoid relitigation of claims, and to prevent vexation, confusion, chaos and the inefficient use of judicial resources." *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 377; 521 NW2d 847 (1994). "Unlike res judicata, which precludes relitigation of claims, collateral estoppel prevents relitigation of issues, which presumes the existence of an issue in the second proceeding that was present in the first

proceeding." *Allen Park Retirees Ass'n, Inc v Allen Par*k, 329 Mich App 430, 444-445; 942 NW2d 618 (2019) (citations omitted). The elements of collateral estoppel are:

> (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue, and (3) there must be mutuality of estoppel. [*Mecosta Co Med Ctr*, 509 Mich at 283 (quotation marks and citation omitted; alteration in original).]

The first prong of the collateral estoppel analysis requires that the ultimate issue to be determined in the subsequent action must be the same as the ultimate issue litigated in the first action. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). The ultimate issues in common "must be *identical*, and not merely similar," and "must have been both actually and necessarily litigated." *Id*. (emphasis added). "A judgment is considered a determination on the merits, and thereby triggers the doctrine of collateral estoppel on relitigation, even if the action has been resolved by a summary disposition." *Detroit v Qualls*, 434 Mich 340, 356; 454 NW2d 374 (1990). Additionally, " '[m]utuality of estoppel' occurs when 'the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' " *Hamood v Trinity Health Corp*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364627); slip op at 5 (quotation marks omitted). However, mutuality of estoppel is not always mandatory. *Id*. "Whenever collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Id*. (quotation marks and citation omitted).

Addressing the requirements of collateral estoppel in reverse order, we first note that mutuality of estoppel is not required in this case because collateral estoppel is being asserted defensively by Hudson. *Id*. As to the second element, Farmers was not a party to the prior action between Lekli and Hudson—culminating in this Court's ruling in *Lekli II*—from which Hudson's collateral estoppel argument springs.[2] Finally, as to the first element, the core issue in this action—whether Farmers could seek reimbursement from Hudson—was not litigated in any of the previous cases involving these parties. Hudson's collateral estoppel argument thus fails.

### 3. RES JUDICATA

Res judicata bars a second action on the same claim if " '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' " *Foster v Foster*, 509 Mich 109, 120; 983 NW2d 373 (2022), quoting *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). Michigan courts use a transactional test to determine if the matter could have been resolved in the prior case. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 420; 733 NW2d 755 (2007). "The transactional test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. (quotation marks and citation omitted). "Whether a factual grouping constitutes a

---

[2] Additionally, for reasons that will be addressed further below, Farmers and Lekli were not in privity with each other.

-10-

transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit . . . ." *Adair*, 470 Mich at 125 (quotation marks, citation, and emphasis omitted).

There is no dispute that all of the prior actions were resolved when Farmers filed its complaint against Hudson for reimbursement. Thus, the first element of the res judicata test has been satisfied. However, Hudson cannot meet the second or third element to support its argument that Farmers' claim for reimbursement is barred by the doctrine of res judicata.

Regarding the second element, the prior action at issue here did not involve the same parties or their privies. See *Foster*, 509 Mich at 120. Hudson asserts that Farmers is in privity with Lekli, and that Farmers is not entitled to reimbursement because, in *Lekli II*, this Court held that Lekli could not collect PIP benefits from Hudson directly due to his failure to provide notice to Hudson under MCL 500.3145. See *Lekli II*, unpub op at 4-5. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich at 122. (quotation marks and citation omitted). As our Supreme Court has explained,

> Generally, a relationship based on an assignment of rights is deemed to be one of privity. See *Taylor v Sturgell*, 553 US 880, 894; 128 S Ct 2161; 171 L Ed 2d 155 (2008) (discussing nonparty preclusion under res judicata and collateral estoppel). An assignment of rights occurs when the assignor transfers his or her rights or interests to the assignee. See *State Treasurer v Abbott*, 468 Mich 143, 150 n 8; 660 NW2d 714 (2003) (" 'This court has defined the word "assignment" in the language of Webster as meaning "to transfer or make over to another"; and in the language of Burrill's Law Dictionary as "to make over or set over to another; to transfer." ' ") (emphasis and citation omitted), quoting *Allardyce v Dart*, 291 Mich 642, 644-645; 289 NW 281 (1939). In these circumstances, the assignee succeeds to the rights of the assignor, thus meeting the general definition of privity. See Casad & Clermont, *Res Judicata: A Handbook on its Theory, Doctrine, and Practice* (Durham: Carolina Academic Press, 2001), p 151.

> But the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor. Cf. *Sodak Distrib Co v Wayne*, 77 SD 496, 502; 93 NW.2d 791 (1958) ("Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts."). Rather, "[t]he binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner." *Id*. at 502-503; 93 NW2d 791. In other words, the assignee succeeds to those rights subject to any earlier adjudication involving the assignor that defined those rights. [*Mecosta Co Med Ctr*, 509 Mich at 284-285.]

Lekli is not in privity with Farmers, such that Farmers cannot now seek reimbursement from Hudson. Lekli's claim for PIP benefits directly from Hudson is simply not the same "property or interest" as Farmers' claim for reimbursement. Moreover, Farmers' claim for reimbursement exists separately from Lekli's claim, as Michigan law establishes that insurers who

service claims under the MACP have a statutory right to seek reimbursement from higher-priority insurers. See MCL 500.3175. Indeed, nothing in the no-fault act, MCL 500.3101 *et seq*., conditions an assigned insurer's reimbursement rights on the insured's ability to recover directly from the higher-priority insurer. See *Allstate Ins Co*, 321 Mich App at 559 (finding that the plaintiff, an assigned-claims insurer, could seek reimbursement from the defendant, the insurer of highest priority, because the "plaintiff's reimbursement action was timely under MCL 500.3175"); *Allen v Farm Bureau Ins Co*, 210 Mich App 591, 597; 534 NW2d 177 (1995) (explaining that the defendant, Farm Bureau, had a "statutorily created right to reimbursement . . . independent of the party to whom it paid benefits"). Accordingly, Hudson cannot meet the second prong of the res judicata test.

The third prong requires that the claim at issue "was, or could have been, resolved in the first." *Foster*, 509 Mich at 120 (quotation marks and citation omitted). Farmers' claim for reimbursement certainly was not resolved in a prior action, nor could it have been. In this case, there is no dispute that Farmers completed PIP benefit payments to Lekli on May 17, 2023. Hudson was identified as the highest priority insurer in 2019, after it was determined that "Great American's policy did not provide coverage in this instance[.]" *Lekli I*, unpub op at 4. An insurer assigned under the MAIPF can seek reimbursement from the responsible insurer once the priority dispute is resolved. See MCL 500.3175. This is so regardless of the insured's ability to directly recover PIP benefits, provided that the assigned-claims insurer adheres to the applicable statute of limitations set forth in MCL 500.3175(3), which states:

> (3) An action to enforce rights to indemnity or reimbursement against a third party must not be commenced after the later of the following:
>
> (a) Two years after the assignment of the claim to the insurer.
>
> (b) One year after the date of the last payment to the claimant.
>
> (c) One year after the date the responsible third party is identified.

Here, because Hudson was identified as the highest priority insurer in 2019, and Farmers completed payment to Lekli in May 2023, Farmers was only able to pursue its claim for reimbursement after May 2023. MCL 500.3175(3)(b). It could not have done so in any of the prior actions, the latest of which was decided by this Court in October 2022. See *Lekli II*, unpub op at 1. Thus, Hudson cannot establish that res judicata should bar Farmers' claim for reimbursement.

## C. THE LAW-OF-THE-CASE DOCTRINE

Hudson additionally argues that the law-of-the-case doctrine bars Farmers' claim for reimbursement because the trial court previously decided, and this Court affirmed, that Lekli could not obtain PIP benefits from Hudson. We disagree.

"The law-of-the-case doctrine is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott*, 508 Mich at 286. "The purpose of the doctrine is primarily to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Id*. at 286-287 (quotation marks and citation

omitted).  The law-of-the-case doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal."  *Grievance Admin v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

The law-of-the-case doctrine does not apply to bar Farmers' claim.  As has already been discussed, the sole issue decided in *Lekli II*, which forms the basis for Hudson's argument here, was whether Lekli could collect PIP benefits from Hudson.  *Lekli II*, pp 1-2.  This Court ruled that Lekli could not do so because he failed to adhere to the notice requirements in MCL 500.3145.  *Id.*, unpub op at 4-5.  Hudson again argues that, because this Court's ruling that Lekli could not recover from Hudson is law of the case, Farmers cannot seek reimbursement from Hudson.  Hudson misunderstands the doctrine, which, again, only applies "to issues actually decided, either implicitly or explicitly, in the prior appeal."  *Lopatin*, 462 Mich at 260.  This Court never ruled that Farmers could not seek reimbursement from Hudson in *Lekli II*.  Moreover, this Court's prior ruling that Lekli could not obtain PIP benefits from Hudson has no bearing on Farmers' right to reimbursement, given that Farmers' statutory right to reimbursement under MCL 500.3175 exists independent of Lekli's right or ability to obtain PIP benefits directly from Hudson.  Accordingly, Hudson's claim lacks merit.

## D.  ATTORNEY FEES

Hudson next argues that the trial court abused its discretion by awarding attorney fees to Farmers.  However, we lack subject-matter jurisdiction to review this issue.

A court is "continually obliged to question sua sponte its own jurisdiction over . . . the subject matter of an action[.]"  *O'Connell v Director of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016) (quotation marks and citation omitted).  "Under the court rules, this Court has jurisdiction over appeals from a 'final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6) . . . .' "  *Chen v Wayne State Univ*, 284 Mich App 172, 192; 771 NW2d 820 (2009), quoting MCR 7.203(A)(1).  Usually, if a claim of appeal from a final order is timely filed, the appellant may raise "all issues related to other orders entered in the case."  *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 500 n 1; 730 NW2d 481 (2007).  However, this rule does not apply to orders entered after the claim of appeal has been filed.  *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989).[3] Hudson filed its claim of appeal in this Court on January 23, 2024.  The order granting Farmers' motion to reinstate and for entry of a judgment against Hudson, which granted Farmers' request for attorney fees, was entered on February 13, 2024.  This Court thus lacks subject-matter jurisdiction to review the trial court's ruling on Farmers' request for attorney fees.

## E.  MISCELLANEOUS ARGUMENTS

Hudson raises five additional claims in its brief on appeal that are not listed in the statement of questions presented, including challenges based on Lekli's inability to collect PIP benefits,

---

[3] "Although cases decided before November 1, 1990, are not binding precedent, they nevertheless can be considered persuasive authority[.]"  *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).

allegations that Farmers is merely a subrogee in this matter, and additional challenges regarding public policy and Farmers' overall right to reimbursement. "An issue not contained in the statement of questions presented is waived on appeal." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004); see also MCR 7.212(C)(5) (stating that an appellate brief must include "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal."). Even if we were to address these claims, we find them without merit.

## 1. IMPLICATION AS INSURER

Hudson's argument on this point is essentially that Lekli knew or should have known that Hudson could be the highest priority insurer in this matter, but declined to add Hudson to the underlying lawsuit.[4] This argument entirely pertains to Lekli, who was not named as a party in the current matter and does not participate in this appeal. To the extent that Hudson is asking this Court to make a ruling as to Lekli's failure to add Hudson as a party in a separate case, we have no authority or obligation to do so. See *Shouneyia v Shouneyia*, 291 Mich App 318, 323; 807 NW2d 48 (2011) (quotation marks and citation omitted; second alteration in original) ("Michigan courts have consistently recognized that [a] court may not make [a]n adjudication affecting the rights of a person or entity not a party to the case."). To the extent that this argument is somehow intended to tie into Hudson's argument that Farmers is not entitled to reimbursement from Hudson because Lekli is not entitled to PIP benefits from Hudson, we find that the claim is abandoned for failure to make any meaningful argument on that point. See *Berger*, 277 Mich App at 712 ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

## 2. NOTICE

Hudson next argues that, because Lekli did not provide Hudson with timely notice of its claim for PIP benefits, Farmers is not entitled to reimbursement from Hudson. We discussed this contention in the context of Hudson's arguments regarding collateral estoppel, res judicata, and law of the case, *infra*. As was earlier stated, MCL 500.3175 establishes that insurers who service claims under the MACP have a statutory right to seek reimbursement from higher-priority insurers, meaning that Farmers' claim for reimbursement exists separately from Lekli's direct claim for PIP benefits. See *Allstate Ins Co*, 321 Mich App at 559; *Allen*, 210 Mich App at 597. Farmers followed the appropriate statute of limitations for bringing its claim for reimbursement under MCL 500.3175(3). There is no statutory bar to the claim in that sense, either. Accordingly, Hudson's argument lacks merit.

## 3. SUBROGATION

---

[4] It is unclear whether this portion of Hudson's brief is intended to be an argument or whether it is merely an introductory section. The section is labeled as Issue I in the body of the brief, however, and thus we will treat it as an argument on appeal.

Hudson argues that Farmers' action for reimbursement is a civil subrogation action, and because Farmers stands in the shoes of Lekli, Farmers is not entitled to reimbursement. This is not so. While the parties may use the terms "subrogation" and "reimbursement" interchangeably, this action is only one for reimbursement. An assigned claims insurer's action for reimbursement under MCL 500.3175 is not considered a subrogation action. Instead, MCL 500.3175 explicitly provides that an insurer assigned a claim under the MACP may bring an action for reimbursement and indemnification of the claim. The statute requires the assigned insurer to preserve and enforce rights to indemnity or reimbursement against third parties and to account to the MAIPF for those rights. MCL 500.3175(2). Actions for reimbursement under the statute do not involve the insurer stepping into the shoes of the insured to assert the insured's rights, but rather enforces the insurer's statutory rights to recover costs incurred as a result of servicing an assigned claim for PIP benefits.

Michigan courts have consistently held that the statutory right to reimbursement under the assigned claims plan is independent of subrogation theory. For example, in *Allstate Ins Co*, 321 Mich App at 554-555, this Court explicitly stated that an insurer's right to reimbursement is a statutory right independent of the insured's right to PIP benefits. Additionally, in *Allen*, 210 Mich App at 597; 534 NW2d 177 (1995), this Court explained that the defendant insurer's right to reimbursement under MCL 500.3175 was "independent of the party to whom it paid benefits[.]" See also *Spencer v Citizens Ins Co*, 239 Mich App 291, 305; 608 NW2d 113 (2000) (stating that MCL 500.3175 creates a statutory form of "recourse" for "an assigned-claim insurer that later discovers a higher priority insurer"). Thus, Farmers' claim for reimbursement is not one based in subrogation. Hudson's argument lacks merit.

## 4. PUBLIC POLICY

Hudson contends that requiring it to reimburse Farmers violates public policy, as it "turns the pertinent No-Fault statutes on their heads, particularly MCL 500.3145, which requires claimants to notify insurers within one year of the accident." In support of this argument, Hudson cites the absurd-results doctrine, which states that "[s]tatutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest." *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 460; 965 NW2d 232 (2020) (quotation marks and citation omitted). However, Hudson overlooks that the doctrine "may only be invoked when it is quite impossible that the Legislature could have intended the result." *Reidenbach v Kalamazoo*, 327 Mich App 174, 188; 933 NW2d 335 (2019) (quotation marks and citation omitted). Hudson reiterates its argument that Farmers should not be entitled to reimbursement because Lekli did not provide proper notice under MCL 500.3145. To restate again, MCL 500.3175 provides a separate, statutorily created right to reimbursement. See *Allstate Ins Co*, 321 Mich App at 559; *Allen v Farm Bureau Ins Co*, 210 Mich App at 597. Hudson makes no effort to explain how the interplay between MCL 500.3145 and MCL 500.3175 produces absurd results. This Court has no obligation to make that argument on Hudson's behalf. See *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019) ("Plaintiff cannot leave it to this Court to make his arguments for him.").

## 5. REIMBURSEMENT

Finally, Hudson argues that Farmers and the MAIPF, which is not a party to this lawsuit, failed to adhere to the statutory procedure for seeking reimbursement from Hudson under MCL 500.3172. As an initial matter, this Court cannot "make [a]n adjudication affecting the rights

-15-

of a person or entity not a party to the case." *Shouneyia*, 291 Mich App at 323 (quotation marks and citation omitted; alteration in original). Further, the record indicates that Farmers timely commenced an action for reimbursement in accordance with MCL 500.3175. Hudson's argument thus fails.

## III.  CONCLUSION

For the foregoing reasons, the trial court did not err by granting summary disposition to Farmers under MCR 2.116(I)(2). Hudson is not entitled to relief.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi

-16-